141 P.3d 1143

**STATE of Idaho, Plaintiff–Appellant–Cross Respondent,**

v.

**Shane Paul OWEN, Defendant–Respondent–Cross Appellant.**

No. 31404.

Court of Appeals of Idaho.

April 12, 2006.

Review Denied Aug. 1, 2006.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for appellant-cross respondent. Kenneth K. Jorgensen argued.

Ronald S. George, Pocatello, for respondent-cross appellant.

PERRY, Chief Judge.

The state of Idaho appeals from the district court's order withholding judgment for Shane Paul Owen. Owen cross-appeals the

district court's order denying his motion to suppress. Because we conclude that the district court erred in denying Owen's suppression motion, we vacate the order withholding judgment.

## I.

### FACTS AND PROCEDURE

Owen's landlord brought an eviction action against Owen and obtained a judgment of eviction as well as a money judgment for court costs. When Owen failed to vacate the premises in compliance with the judgment, the landlord obtained a writ of execution directing the sheriff to remove Owen's possessions for the purpose of inventory, storage, and eventual auction to satisfy the landlord's judgment. Owen and his girlfriend drove by the apartment while the officers were inventorying their possessions, were pulled over by one of the officers, and were escorted back to the apartment. Both were told to wait and not allowed to leave. Owen's girlfriend had $995 in her purse and offered to pay the judgment with the money in her possession, but the landlord was not present and the officers would not accept the money.

During the inventory and removal of items from the apartment, officers discovered drug paraphernalia and written notes discussing drugs. Officers also discovered a locked safe underneath a bed. The safe was pulled out and placed on top of the bed. Owen's girlfriend was allowed inside the apartment and given permission to take some personal items that had already been inventoried. She picked up the safe but was told she could not take it. Owen's girlfriend was very upset, and there were many officers in the bedroom. In the confusion, Owen's girlfriend eventually took the safe outside. The safe was placed in the car of Owen's friend who had arrived after Owen and his girlfriend had been escorted to the apartment. The supervising officer ordered the safe removed from the car and taken back into custody. After retrieving the safe, the supervising officer had a drug dog sniff the safe. The dog alerted, indicating the possibility of drugs in the safe. The supervising officer and the sheriff decided to inventory the contents of the safe at the scene and engaged the services of a locksmith to open the safe at the apartment. Inside the safe was marijuana and heroin. In their reports and during the suppression hearing, the officers indicated they were suspicious that the safe might have drugs inside prior to the drug dog's sniff.

Owen was charged with two counts of possession of a controlled substance with intent to deliver. I.C. § 37–2732. Owen moved to suppress the evidence found in the safe and in a later search of his car. The motion to suppress the evidence found in the safe was denied, and the evidence found in the car was suppressed. Owen pled guilty to one count of possession of a controlled substance, I.C. § 37–2732(a)(1)(A–B), reserving his right to appeal the order denying his motion to suppress. The district court granted a withheld judgment and placed Owen on probation. The state appeals from the district court's order withholding judgment, contending Owen did not qualify for a withheld judgment. Owen cross-appeals the order denying his motion to suppress the evidence found in the safe.

## II.

### ANALYSIS

Owen asserts the state produced no evidence at the suppression hearing to indicate the department had adopted any standardized procedures that provided guidance as to when officers may open closed or locked containers found during an inventory search. Owen argues that, absent such standardized procedures governing the opening of the safe, the warrantless inventory search of the safe was insufficiently regulated to satisfy the Fourth Amendment.

██ The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact, which are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996). At a suppression hearing, the power to assess the credi-

bility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez–Molina,* 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers,* 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct.App.1999).

■ Pursuant to a writ of execution in an eviction action, law enforcement officers may enter a home and seize all the possessions of an occupant who has been found in default and ordered to vacate the landowner's premises. *See* I.C. §§ 6–303, 6–310, 6–311, 6–311A, 6–311C; *see also State v. Myers,* 130 Idaho 440, 442–43, 942 P.2d 564, 566–67 (Ct.App.1997). A warrantless search is presumptively unreasonable unless it falls within certain special and well-delineated exceptions to the Fourth Amendment warrant requirement. *Coolidge v. New Hampshire,* 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2031–2032, 29 L.Ed.2d 564, 575–76 (1971); *State v. Ferreira,* 133 Idaho 474, 479, 988 P.2d 700, 705 (Ct.App.1999). Inventory searches are one such well-established exception to the warrant requirement of the Fourth Amendment. *Colorado v. Bertine,* 479 U.S. 367, 371, 107 S.Ct. 738, 741, 93 L.Ed.2d 739, 745 (1987); *State v. Foster,* 127 Idaho 723, 726, 905 P.2d 1032, 1035 (Ct.App.1995). The probable cause requirements necessary for a search warrant are inapplicable to analysis of a valid inventory search. *Bertine,* 479 U.S. at 371, 107 S.Ct. at 741, 93 L.Ed.2d at 745; *State v. Bray,* 122 Idaho 375, 379, 834 P.2d 892, 896 (Ct.App.1992).

■ To satisfy the Fourth Amendment, reasonable, standardized criteria or established routine must regulate inventory searches generally, and such criteria must specifically regulate the opening of closed containers found during an inventory search. *Florida v. Wells,* 495 U.S. 1, 4, 110 S.Ct. 1632, 1635, 109 L.Ed.2d 1, 6–7 (1990) *Bertine,* 479 U.S. at 375, 107 S.Ct. at 742–43, 93 L.Ed.2d at 747–48, *Foster,* 127 Idaho at 726, 905 P.2d at 1035; *Bray,* 122 Idaho at 378–79, 834 P.2d at 895–96. As stated in *Wells:*

> Our view that standardized criteria ... or established routine ... must regulate the opening of containers found during inventory searches is based on the principle that an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence. The policy or practice governing inventory searches should be designed to produce an inventory. The individual police officer must not be allowed so much latitude that inventory searches are turned into a "purposeful and general means of discovering evidence of crime."

*Wells,* 495 U.S. at 4, 110 S.Ct. at 1635, 109 L.Ed.2d at 6 *quoting Bertine,* 479 U.S. at 376, 107 S.Ct. at 743, 93 L.Ed.2d at 748. In determining if an inventory procedure is reasonable, the court must balance the government's interest in performing its legitimate caretaking functions against the Fourth Amendment interest the individual owner has in the property subject to inventory. *Illinois v. Lafayette,* 462 U.S. 640, 647, 103 S.Ct. 2605, 2610, 77 L.Ed.2d 65, 71–72 (1983); *Bray,* 122 Idaho at 379, 834 P.2d at 896.

■ Nothing prohibits the exercise of police discretion in opening containers found during inventory searches, so long as the discretion is exercised according to the standard criteria. *Wells,* 495 U.S. at 3–4, 110 S.Ct. at 1634–35, 109 L.Ed.2d at 5–7. Therefore, a policy or standard criteria allowing an officer discretion to determine if a container should be opened, depending on the nature of both the search and the container, satisfies the Fourth Amendment just as would policies of opening all containers or of opening no containers. *Id.,* at 4, 110 S.Ct. at 1635, 109 L.Ed.2d at 6–7.

In *Wells,* a police officer opened a locked container found inside an impounded vehicle during an inventory search of the vehicle contents in the total absence of any department policy regarding the opening of locked containers. The United States Supreme Court held that, because the police department had no policy regarding locked containers found during the course of an inventory search, the search of the locked container in that case was not sufficiently regulated to satisfy the Fourth Amendment. *Id.,* at 4–5, 110 S.Ct. at 1635, 109 L.Ed.2d at 6–7.

■ In this case, the testimony of two officers, including a supervising officer on the scene, showed the department had no writ-

ten, established policy covering inventory searches. An unwritten policy that everything taken into police custody was to be inventoried did exist. The record demonstrates that the situation of a locked safe had not arisen in either of the testifying officers' experience. A general practice of inventorying all items had been in effect for approximately eight years, and the two officers believed it included opening closed boxes in the past. However, the testimony of both officers demonstrated that even this unwritten policy was vague. The supervising officer testified that he was unaware of any specific policy or instructions from the sheriff relating to how locked containers should be handled during an inventory search. The record demonstrates that the decision to open the safe was made in this instance at the scene.

We initially note that the better practice for Idaho law enforcement departments would be to have a written policy detailing how officers are to proceed when conducting inventory searches. The absence of a well-defined, written policy establishing standardized criteria for inventory searches increases a department's exposure to liability and may create evidentiary issues like the one presented here. In the instant case, the record does not support a conclusion that the sheriff's department had any policy specifically governing locked containers in the context of an inventory search. The decision to open the safe at the scene was a discretionary one, but there is also no evidence in the record that the decision was guided by any standard criteria for opening locked containers set forth by the department. Similar to *Wells*, the officers here had authority to conduct an inventory search, but opened a locked container in the apparent absence of any department policy or criteria, written or unwritten, regarding opening such containers. Any suspicion the officers had that the safe contained contraband did not alleviate the necessity for the sheriff's department to either get a warrant or to establish, and its officers to follow, a standardized criteria for dealing with locked containers pursuant to the inventory search exception to the warrant requirement of the Fourth Amendment. Therefore, we hold that the opening of the safe was not sufficiently regulated by department policy or standard criteria to satisfy the Fourth Amendment. Accordingly, the district court erred in denying Owen's motion to suppress evidence found in the safe.

## III.

## CONCLUSION

The officers conducted a lawful inventory search of Owen's apartment. However, the opening of the safe, in absence of a specific policy regarding locked containers, did not satisfy the Fourth Amendment. The evidence discovered in the safe was found outside the inventory exception to the Fourth Amendment warrant requirement. Therefore, the district court erred in denying Owen's motion to suppress evidence. Because of our holding, it is unnecessary for us to address the other issues raised by the state or Owen on appeal. Accordingly, the order denying the motion to suppress is reversed and the order withholding judgment is vacated.

Judge LANSING and Judge GUTIERREZ concur.