**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket Nos. 37767/38051/38078**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2012 Opinion No. 12** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: February 27, 2012** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **AMBER DAWN STEWART,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Michael E. Wetherell, District Judge.

Order denying motion to suppress, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Erik R. Lehtinen, Deputy Appellate Public Defender, Boise, for appellant. Erik R. Lehtinen argued.

Hon. Lawrence G. Wasden, Attorney General; Russell J. Spencer, Deputy Attorney General, Boise, for respondent. Russell J. Spencer argued.

_____

GRATTON, Chief Judge

Amber Dawn Stewart appeals from the district court's memorandum decision and order denying Stewart's motion to suppress.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Stewart was stopped while driving in Garden City for failure to signal. She was not insured, and a records check revealed that she was driving on a suspended license due to her failure to maintain insurance. The officer placed Stewart under custodial arrest and then, through dispatch, requested a tow truck to impound Stewart's vehicle. Before the tow truck arrived, the officer performed an inventory search of the vehicle. The officer discovered a small metal tin in the driver's door pocket that contained marijuana and methamphetamine. Stewart admitted the drugs belonged to her, but denied using the methamphetamine, claiming instead to be selling it.

1

Stewart was charged with felony possession of a controlled substance with the intent to deliver (methamphetamine), and two misdemeanors, driving without privileges and possession of a controlled substance (marijuana). Stewart filed a motion to suppress, claiming the officer's impoundment and inventory search violated Fourth Amendment rights. The district court denied Stewart's motion to suppress. Stewart entered conditional guilty pleas to the methamphetamine and driving without privileges charges, reserving the right to appeal the denial of her motion to suppress, and the State dismissed the marijuana charge. Stewart appeals.

## II.

## DISCUSSION

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Warrantless searches are presumed to be unreasonable and therefore violative of the Fourth Amendment. *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995). The State may overcome this presumption by demonstrating that a warrantless search either fell within a well-recognized exception to the warrant requirement or was otherwise reasonable under the circumstances. *Id.* Ultimately, the standard set forth in the Fourth Amendment is reasonableness. *Cady v. Dombrowski*, 413 U.S. 433, 439 (1973).

Inventory searches are a well-recognized exception to the warrant requirement of the Fourth Amendment. *Colorado v. Bertine*, 479 U.S. 367, 371 (1987); *Illinois v. Lafayette*, 462 U.S. 640, 643 (1983); *State v. Owen*, 143 Idaho 274, 277, 141 P.3d 1143, 1146 (Ct. App. 2006). The legitimate purposes of inventory searches are: (1) protect the owner's property while it remains in police custody; (2) protect the State against false claims of lost or stolen property; and (3) protect police from potential danger. *South Dakota v. Opperman*, 428 U.S. 364, 369-70 (1976). However, an inventory search must not be a ruse for general rummaging in order to

2

locate incriminating evidence. *Florida v. Wells*, 495 U.S. 1, 3 (1990). "Inventory searches, when conducted in compliance with standard and established police procedures and not as a pretext for criminal investigation, do not offend Fourth Amendment strictures against unreasonable searches and seizures." *Weaver*, 127 Idaho at 290, 900 P.2d at 198.

Although inventory searches of impounded vehicles' contents constitute an exception to the warrant requirement, an inventory search is not valid unless the police first obtain lawful possession of the vehicle. *State v. Foster,* 127 Idaho 723, 727, 905 P.2d 1032, 1036 (Ct. App. 1995). The Idaho Supreme Court has stated:

> An impoundment of a vehicle constitutes a seizure and is thus subject to the limitations of the Fourth Amendment. If the impoundment violates the Fourth Amendment, the accompanying inventory is also tainted, and evidence found in the search must be suppressed.

*Weaver,* 127 Idaho at 291, 900 P.2d at 199. An impoundment will be found to comply with Fourth Amendment standards only if it was "reasonable under all the circumstances known to the police when the decision to impound was made." *Foster*, 127 Idaho at 727, 905 P.2d at 1036. The initial decision to impound a vehicle following the operator's arrest is left to the discretion of the officer involved. *State v. Smith*, 120 Idaho 77, 80, 813 P.2d 888, 891 (1991).

Stewart does not contend that Garden City failed to have standards and procedures in place. Stewart also does not assert that the inventory search itself was improperly conducted. Instead, Stewart argues that the officer failed to comply with Garden City Police Department's impound policy in two respects: (1) the impoundment itself was not authorized because the vehicle would not have been left unattended on the street or unsecured; and (2) the officer did not obtain the proper approval prior to having Stewart's vehicle towed.

Turning to the first claim, Stewart points to a Garden City Police policy which provides that a vehicle may be impounded where "the driver of the vehicle is taken into custody by the Police Department and the vehicle would be left unattended upon the street or unsecured." Stewart claims that, under the circumstances, the vehicle would have neither been left unattended on a street nor unsecured. In response to the stop, Stewart parked her vehicle in front of a 24-hour gas station. She argues that the vehicle's location on the front side of a 24-hour business, combined with the officer's ability to use Stewart's keys to lock the vehicle, means it would not have been left on the street or unsecured.

3

In *Foster*, this Court held that the impoundment of a defendant's car was unreasonable. *Foster*, 127 Idaho at 727-28, 905 P.2d at 1036-37. We held that the State presented no justification for the officers' decision to impound the automobile:

> Foster's car was parked off the street on a private driveway at a duplex rented by an acquaintance of Foster. It was not illegally parked or interfering with traffic. There is no evidence that the duplex tenant or owner objected to the vehicle's remaining temporarily on the driveway. The police had no reason to believe the vehicle was stolen or abandoned or that it was at risk of theft or damage.

*Id.* at 727, 905 P.2d at 1036. Since the State failed to meet its burden to show that the decision to impound was reasonable, this Court held that the district court erred in holding that the search fell within the inventory exception of the Fourth Amendment. *Id.* at 727-28, 905 P.2d at 1036-37.

This case is distinguishable from *Foster*. There, the vehicle was parked in a private drive of an acquaintance, without objection of the property owner, and without risk of damage. *Id.* at 727, 905 P.2d at 1036. Here, the vehicle was in a gas station lot open to the public. The reasonable expectation is that the parking spaces were to be used by individuals while transacting business at the gas station. The vehicle was uninsured. Thus, before the vehicle could be removed, a driver would need to obtain insurance coverage or confirm that the driver who might remove the vehicle from the lot had insurance which would, in fact, cover the vehicle as required by Idaho law. The fact that the vehicle was uninsured could well have extended the time it would need to remain at the lot before it could be legally operated. Moreover, the officer had legitimate reasons to believe the vehicle was at risk of theft or damage. Merely locking the doors and leaving the vehicle would not have "secured" Stewart's vehicle against potential property damage or theft, e.g., windows being smashed, locks being jimmied, or the body being damaged. The officer also testified that the area was a high-crime area. Leaving the vehicle at its location would not protect the police against potential liability claims.

Stewart argues that the officer testified that he had essentially unfettered discretion to impound. While the State disagrees with that characterization of the officer's testimony, under the circumstances, impounding the vehicle rather than leaving it for a potentially-extended period of time is objectively reasonable, regardless of the extent of discretion the officer believed he had. Leaving even a locked vehicle unattended in a business parking lot does not secure it against property damage or the police from liability therefor. Considering that the car was

4

uninsured and could not be operated legally, and that it was located in a public parking lot in a high-crime area, the officer's decision to impound Stewart's vehicle was objectively reasonable.

Before turning to the second claim, we note that Stewart argued below, and the district court analyzed, whether the officer acted appropriately in refusing or failing to allow Stewart's friends, who arrived on the scene, to drive the vehicle away rather than impounding it. While those facts are mentioned in Stewart's statement of facts, she provides no argument that the officer's refusal to allow her friends to take the vehicle constituted a violation of policy or her Fourth Amendment rights. Thus, the Court need not address the issue; however, we observe that this case is distinguishable from the improper impound in *Weaver*. In *Weaver,* the Idaho Supreme Court held that a Kootenai County deputy's decision to impound the vehicle was not reasonable because the officer failed to make inquiries and discover readily ascertainable information before deciding to impound the vehicle. *See Weaver*, 127 Idaho at 292, 900 P.2d at 200. Weaver, in the company of his mother, was stopped and arrested on an outstanding warrant from Pennsylvania. *Id.* at 289, 900 P.2d at 197. At the scene, the officer concluded that the vehicle's location presented a traffic hazard and that impoundment was necessary. However, by the officer's own testimony, information was readily available to him that Weaver's mother was the owner of the vehicle, that she had a valid driver's license, and that she stated that she was able to drive the car. *Id.* at 289-90, 900 P.2d at 197-98. The Court held that "a person of reasonable caution would not be warranted in the belief that a decision to impound the vehicle was appropriate without first attempting to discover the readily ascertainable, pertinent facts." *Id.* at 292, 900 P.2d at 200. Thus, in *Weaver*, the Court determined that, based on readily ascertainable facts, the officer had no reason to believe that the vehicle could not be legally removed by its owner. The owner of the vehicle in the present case, Stewart, was under arrest and the vehicle itself was uninsured. Without insurance, the vehicle could not be legally operated even if Stewart was released following her arrest. Determining the existence, extent, and coverage of another proposed driver's own insurance, and whether in fact that insurance would satisfy Idaho law in the operation of Stewart's vehicle, is outside the readily ascertainable facts contemplated in *Weaver*. Moreover, even though Stewart claimed that one of her friends had insurance, the record does not reflect that information, readily available to the officer at the scene, would have been sufficient to make a valid determination that one of Stewart's friends

5

possessed insurance which would cover operation of the vehicle. Without appropriate insurance, removal of the vehicle would simply continue its illegal operation.

Regarding Stewart's second claim, Stewart contends that the officer failed to obtain Watch Commander approval to impound the vehicle. Garden City Police policy provided that officers may impound vehicles under certain circumstances "with Watch Commander approval." The officer testified that his Watch Commander had given him standing approval at the beginning of the shift to tow vehicles as long as it was within policy. We seriously doubt that this kind of "standing" approval is within the contemplation of the policy. Certainly, having a second decision maker involved in each tow decision is good policy and further ensures compliance with the policy by the officer on the scene. However, even if obtaining standing approval to impound, as opposed to obtaining individual approval to impound, is inconsistent with the department policy, it does not render the impound and subsequent search unreasonable under a Fourth Amendment analysis.[1] As discussed above, the decision to impound the vehicle under the circumstances was reasonable, which was not negated by failure to obtain individual Watch Commander approval. In addition, the district court further found that there was no evidence that the actions of the officer were a ruse to locate incriminating evidence. The district court's factual determination is supported by the record.

---

[1]     Noncompliance with department policies does not necessarily translate into a search that is unreasonable per se. Some courts have found inventory searches reasonable despite police officers' failure to comply with department policy. *See, e.g.*, *United States v. Garreau*, 658 F.3d 854 (8th Cir. 2011) (holding an inventory search was lawful where officer "substantially complied" with department policy); *United States v. Woolbright*, 831 F.2d 1390, 1394 (8th Cir. 1987) (failure of police to complete inventory of arrestee's belongings as policy provided after finding drugs in arrestee's suitcase did not render inventory search unreasonable where police changed plans and decided to transfer arrestee to federal authorities); *United States v. Trullo*, 790 F.2d 205, 206 (1st Cir. 1986) ("We will not hold that the officer's failure, technically, to follow the inventory form procedures for valuables meant [that] it was not an inventory search."); *cf. Whren v. United States*, 517 U.S. 806, 816 (1996) (although adherence to procedures shows lack of pretext, deviation from procedures does not prove pretext). It has only been the complete absence of standard criteria guiding the execution of inventory searches that has been categorically found to be violative of the Fourth Amendment. *See Florida v. Wells*, 495 U.S. 1, 4 (1990); *State v. Owen*, 143 Idaho 274, 277, 141 P.3d 1143, 1146 (Ct. App. 2006).

## III.

## CONCLUSION

The impoundment and inventory search of Stewart's vehicle complied with reasonable department policies and was objectively reasonable. Accordingly, we affirm the decision of the district court.

Judge GUTIERREZ and Judge MELANSON **CONCUR.**