IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 47332

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: December 14, 2020 |
| Plaintiff-Respondent, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| ROBERT HENRY WELIEVER, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Minidoka County. Hon. Eric J. Wildman, District Judge.

Judgment of conviction for possession of a controlled substance, affirmed.

Eric D. Fredericksen, State Appellate Public Defender; Kimberly A. Coster, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Andrew V. Wake, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Chief Judge

Robert Henry Weliever appeals from his judgment of conviction for possession of a controlled substance. Idaho Code § 37-2732(c)(1). Weliever argues the inventory search of his car violated his Fourth Amendment rights, therefore the district court erred by denying his motion to suppress all evidence discovered as a result of the search and his motion to reconsider the denial of his suppression motion. Because Weliever did not establish that the inventory search violated his Fourth Amendment rights, the district court did not err in denying either his motion to suppress or his motion to reconsider. Accordingly, Weliever's judgment of conviction is affirmed.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

While on patrol on July 23, 2018, Detective Murphy observed Weliever driving a gray Mercury Topaz. Murphy recognized Weliever from his previous contacts with law enforcement

and knew that an outstanding warrant existed for his arrest. Murphy ran the car's license plates through a law enforcement database, determined the plates were fictitious, and initiated a traffic stop. Murphy arrested Weliever pursuant to the outstanding warrant. Because Weliever had two dogs inside his car at the time of his arrest, Weliever told Murphy that the dogs' owner, Kathy Strate, could come to the scene to retrieve the animals. Arrangements were made and Strate arrived and took the dogs and some of her clothing from the car.

Detective Love arrived on the scene to assist with the stop. Because Murphy arrested Weliever and the car lacked current insurance and proper license plates, the officers impounded the car. Pursuant to the Idaho Policing Policy, which was adopted by their sheriff's office, Murphy and Love conducted an inventory search of the car and completed the impound inventory form provided by their office. During the inventory search, Love located a syringe in the pocket of a jacket located behind the car's center console. The officers retained the syringe as evidence and, after completing the search, had the car towed from the scene. A subsequent test of the syringe showed that it contained methamphetamine.

Approximately two months later, on September 19, 2018, Love and Murphy were on patrol when they noticed Strate driving a blue Toyota with Weliever in the passenger seat. Love initiated a traffic stop because Strate failed to properly signal a turn, to arrest Strate on an unrelated matter, and to arrest Weliever based on the test results disclosing the presence of methamphetamine in the syringe recovered in July. Strate and Weliever were asked to step out of the car, and as Weliever complied, the officers observed what appeared to be a methamphetamine pipe tucked into the side of Weliever's shoe. Weliever was placed under arrest and while being transported to the jail, he admitted to officers that he was in possession of a bag of methamphetamine. Love removed the bag from Weliever's pocket, and a subsequent test found that it contained methamphetamine.

The State charged Weliever with felony possession of a controlled substance stemming from the syringe found during the inventory search of Weliever's car in July, and felony possession of a controlled substance and misdemeanor possession of drug paraphernalia stemming from the incident in September.

Weliever filed a motion to suppress and subsequently amended the motion. Weliever argued, in part, that the officers did not follow the standardized procedures required for inventory searches, and therefore the July inventory search of his car violated his Fourth Amendment rights. Because Weliever's arrest in September was based on probable cause gained from the

unconstitutional search in July, Weliever argued that all evidence obtained as a result of his contact with the officers in July and September should be suppressed. The district court found the July inventory search did not violate Weliever's Fourth Amendment rights and accordingly denied Weliever's motion. Weliever filed a motion to reconsider the denial of his motion to suppress, and the district court denied the motion.

Pursuant to a plea agreement, Weliever entered a conditional guilty plea to one count of felony possession of a controlled substance based on the methamphetamine discovered during his September arrest, reserving the right to appeal the district court's denial of his motion to suppress, and the State dismissed the other charges. The district court entered a judgment of conviction, sentenced Weliever to seven years, with two years determinate, suspended the sentence, and placed Weliever on supervised probation for three years. Weliever timely appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

On appeal, Weliever argues the officers did not comply with the Idaho Policing Policy governing inventory searches because the inventory form filled out by the officers was not a detailed inventory of the contents of the car; therefore, the search violated the Fourth Amendment.[1] Because of this unconstitutional search, Weliever asserts he is entitled to suppression of all evidence gathered as a result of the July and September incidents. In response, the State alleges the district court properly denied Weliever's motion to suppress because, in accordance with the

---

[1]     On appeal, Weliever does not challenge the impoundment of his car.

policy, the officers listed the items of value found during the inventory search of the car. Because the inventory search complied with the parameters of the governing policy, the State argues the search conformed to the requirements of the Fourth Amendment. Regarding the motion to reconsider, the State contends Weliever did not preserve his right to appeal the district court's denial of the motion and did not provide sufficient argument to support the claim on appeal. However, if the claim was preserved, the State argues that the district court did not abuse its discretion.

A.      **Weliever Did Not Establish That the District Court Erred in Its Denial of His Motion to Suppress**

Weliever argues the inventory search did not comply with the governing police policy because it was not a thorough search, did not list all items of value contained in the car, and erroneously included items that were not in the car. Further, Weliever alleges the district court erred in both finding that the governing policy only required the officers to list the valuable items during an inventory search and that the officers complied by listing the items they believed to be of value. Finally, Weliever contends the district court erred in finding that Weliever was required to show that the police acted in bad faith to establish the inventory search violated the Fourth Amendment.

A warrantless search is presumptively unreasonable unless it falls within certain special and well-delineated exceptions to the warrant requirement. *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971); *State v. Ferreira*, 133 Idaho 474, 479, 988 P.2d 700, 705 (Ct. App. 1999). Inventory searches, like those of impounded cars, are one such well-established exception to the warrant requirement. *State v. Stewart*, 152 Idaho 868, 870, 276 P.3d 740, 742 (Ct. App. 2012). Once an officer lawfully takes possession of a car, inventory searches are permissible because they serve the legitimate, caretaking functions of law enforcement by protecting: (1) the owner's property while it remains in police custody; (2) the police against false claims of lost or stolen property; and (3) the police from potential danger. *South Dakota v. Opperman*, 428 U.S. 364, 369-71 (1976). Because inventory searches are routine, noncriminal procedures, they are distinctly different from criminal investigations. *Colorado v. Bertine*, 479 U.S. 367, 371 (1987). As such, the probable cause requirements necessary for a search warrant are inapplicable. *Id.* Instead, the constitutional inquiry is grounded in reasonableness; "reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment." *Id.* at 374.

Courts recognize the protections guaranteed by the Fourth Amendment would be undercut if officers could conduct warrantless searches and subsequently justify the investigative actions by labeling them as inventory searches. *Florida v. Wells*, 495 U.S. 1, 4 (1990); *see also United States v. Lopez*, 547 F.3d 364, 370 (2d Cir. 2008). This would conflict with the rationale supporting the inventory search exception; inventory searches should be designed to produce an inventory, not as a "ruse for a general rummaging in order to discover incriminating evidence." *Wells*, 495 U.S. at 4. Thus, the first requirement for a valid inventory search is that it be regulated by reasonable, standardized criteria or established routine. *Id.*; *see also State v. Owen*, 143 Idaho 274, 277, 141 P.3d 1143, 1146 (Ct. App. 2006). Without such criteria, the inventory search will violate the Fourth Amendment because the lack of a governing policy allows the individual officer "so much latitude that inventory searches are turned into a purposeful and general means of discovering evidence of crime." *Wells*, 495 U.S. at 4; *see also Bertine*, 479 U.S. at 376 (Justice Blackmun, Powell, and O'Connor concurring) (writing separately "to underscore the importance of having such inventories conducted only pursuant to standardized police procedures"); *Stewart*, 152 Idaho at 872 n.1, 276 P.3d at 744 n.1 ("It has only been the complete absence of standard criteria guiding the execution of inventory searches that has been categorically found to be violative of the Fourth Amendment.").

The determination of whether reasonable, standardized criteria govern inventory searches is a broad inquiry; it asks whether reasonable, standardized procedures, such as a uniform police department policy, conveyed general authority for an officer to conduct the inventory search. *See Owen*, 143 Idaho at 277, 141 P.3d at 1146 ("To satisfy the Fourth Amendment, reasonable, standardized criteria or established routine must regulate inventory searches generally."). The established procedures must limit an officer's discretion as to whether to search the car (i.e. mandating inventory searches when an officer impounds a car) and the scope of the search itself (i.e. specifying officers should open closed containers when conducting the search). *See United States v. Mundy*, 621 F.3d 283, 288 (3d Cir. 2010). In this way, the initial inquiry is focused on the existence of criteria itself, not the officer's administrative errors when acting under the lawful umbrella of the criteria's prescribed authority. *See Bertine*, 479 U.S. at 369-72 (holding although officer conducted inventory search in slipshod manner, he nonetheless followed standardized procedures that permitted search).

Secondly, for an inventory search to satisfy the Fourth Amendment, the standardized search procedures must be "administered in good faith." *Bertine*, 479 U.S. at 374. That is, an inventory search conducted pursuant to standardized procedures is valid so long as the officer does not act in bad faith or for the sole purpose of investigation when performing the search. *Id.* at 372. As such, this Court has held "[n]oncompliance with department policies does not necessarily translate into a search that is unreasonable per se." *Stewart*, 152 Idaho at 872 n.1, 276 P.3d at 744 n.1.

While bad faith may be established when an inventory search materially deviated from the standardized criteria, "minor noncompliance with department policies does not invalidate an otherwise lawful inventory search." *United States v. Magdirila*, 962 F.3d 1152, 1157 (9th Cir. 2020); *see also United States v. Garay*, 938 F.3d 1108, 1112 (9th Cir. 2019) (upholding inventory search despite presence of administrative errors); *United States v. Hockenberry*, 730 F.3d 645, 659 (6th Cir. 2013) (holding there is no reason to insist inventory searches be conducted in mechanical "all or nothing" fashion); *United States v. Mundy*, 621 F.3d 283, 293 (3d Cir. 2010) (holding failure of investigating officers to complete towing report as required under governing policy did not demonstrate pretext or bad faith); *United States v. Trullo*, 790 F.2d 205, 206 (1st Cir. 1986) (holding officer's technical failure to follow inventory form procedures for valuables did not mean it was not an inventory search). Ultimately "it is a long leap from the proposition that following regular procedures is some evidence of lack of pretext to the proposition that failure to follow regular procedures proves (or is an operational substitute for) pretext." *Whren v. United States*, 517 U.S. 806, 816 (1996). Thus, to succeed on a motion to suppress, the defendant must establish something beyond the deviation from procedures, and show "something to suggest the police raised the inventory-search banner in an after-the-fact attempt to justify a simple investigatory search for incriminating evidence." *United States v. Rowland*, 341 F.3d 774, 780 (8th Cir. 2003) (internal quotations removed); *see also Garay*, 938 F.3d at 1112.

In light of these principles, federal appellate courts have held inventory searches do not violate the Fourth Amendment simply because officers do not create a comprehensive inventory of the car's contents. *See Magdirila*, 962 F.3d at 1158 (upholding inventory search despite officers not including all property on required form); *Hockenberry*, 730 F.3d at 659 (holding when considering comprehensiveness of inventory list, officer's use of discretion does not necessarily violate Fourth Amendment); *United States v. Lopez*, 547 F.3d 364, 371 (2d Cir. 2008) (holding

officer's omission of small value items and use of catch-all descriptions did not cast doubt on officer's claim that purpose of search was to make an inventory).  In fact, the United States Supreme Court has held an officer's failure to inventory valuable items during an inventory search did not establish bad faith, or even establish a deviation from the governing standardized criteria, on the part of the officer who conducted the search.  *Bertine*, 479 U.S. at 369-372.

In *Bertine*, an officer inventoried the defendant's van after an arrest for driving under the influence.  *Id.* at 368-69.  Local police procedures required a detailed inspection and inventory of impounded vehicles.  *Id.* at 369.  During the search, the officer opened Bertine's backpack and other containers and discovered various controlled substances.  *Id.*  Bertine was charged with offenses for the controlled substances and he moved to suppress the evidence found during the inventory search, arguing that the search of his backpack and closed containers exceeded the permissible scope of such a search under the Fourth Amendment.  *Id.*  The trial court found that the officer performed the inventory of the van in a "somewhat slipshod" manner, which included the officer's failure to list $150 cash found in Bertine's wallet; various credit cards; $210 found in a sealed envelope marked "rent"; and a converter, a hydraulic jack, and a set of tire chains worth a total of $125 on the relevant section of the property form.  *Id.* at 369, 383.  However, despite these omissions and the requirement of a detailed inventory, the Court held "there was no showing that the police, who were following standardized procedures, acted in bad faith or for the sole purpose of investigation."  *Id.* at 372.

Here, Weliever does not dispute that reasonable, standardized criteria governed the search of his car.  During the suppression hearing, the Idaho Policing Policy governing inventory searches was admitted as evidence.  The policy, in its relevant parts, stated:

> **Vehicle inventory searches**
>
> Whenever you impound a vehicle, you should conduct a vehicle inventory search in accordance with this policy.  The purpose of this type of search is to protect the owner's property from damage or loss while the vehicle is in law enforcement custody, to protect you and our agency against claims of lost, damaged or stolen property, and to protect our agency from potential dangers of property stored in the vehicle.
>
> . . . .
>
> **NOTE:**  *If you are conducting this search solely for the purpose of discovering evidence, or if the search exceeds the scope of this policy, you should obtain a search warrant prior to conducting the vehicle search.  If you find evidence, do not*

*terminate the search.  Failure to complete the inventory search may render the search invalid.*

Special Procedures:  Fill out a vehicle search inventory log that includes the date and time of the search and a detailed inventory of the vehicle's contents.  You should search any location in the vehicle where you could reasonably expect to discover valuables or other items for safekeeping.  This includes the passenger compartment, glove box, vehicle top storage containers, tool boxes, and the trunk.  You should open and search all unlocked and locked containers if the contents cannot be determined without opening them.

Pursuant to this policy, Murphy and Love completed the standardized inventory form given to them by their office.  On the form, the officers listed the interior contents of the car as:  "FISHING POLES, DOGS, MISC. TRASH, LEATHERMAN, IDS, SOCIAL SECURITY CARD, 3 PHONES, MULTIPLE CELL PHONES, MISC. TOOLS" and marked the syringe as the only item retained during the search.

The inventory compiled by Murphy and Love was not entirely consistent with the purposes of the Idaho Policing Policy.  Although the officers testified, pursuant to the overarching goals of the inventory search policy, they only listed valuable items on the inventory list, this testimony is undermined by the inclusion of "MISC. TRASH" on the inventory form.  Moreover, the list is both under- and over-inclusive; it omits items that were undisputedly in the car, like the jacket in which the syringe was found, yet includes "DOGS," despite Strate retrieving the animals from the car prior to the search.

Additionally, the inventory does not include identifying information such that either party could identify what items were in the car prior to impoundment.  For example, although the inventory lists "FISHING POLES" AND "MISC. TOOLS," it does not include the number of each or information sufficient to assess value.  Without some identifying information, the inventory form could not be relied upon to show what was in the car upon impoundment.

However, administrative errors during an inventory search do not mandate the suppression of evidence.  Even assuming, without deciding, that these failures constituted a deviation from the Idaho Policing Policy, Weliever provides no argument or authority that this deviation constituted a major deviation that would provide evidence that Murphy and Love acted in bad faith or for a solely investigative purpose when they conducted the inventory search.  Instead, Weliever argues he needed only to show either the search was not consistent with established procedures *or* it was pretext for an exploratory search.  As previously articulated, when reasonable, standardized criteria exist to govern inventory searches, Weliever must point to evidence in the record to establish that

the officers acted in bad faith or for the sole purpose of investigation. A deviation from established procedures is generally insufficient evidence in this regard. A party waives an issue on appeal if either authority or argument is lacking. *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996). Because Weliever does not argue the officers acted in bad faith or for the sole purpose of investigation and points to no evidence that would support such a finding, he fails to establish that the district court erred in denying his motion to suppress.

**B.     Weliever Did Not Establish the District Court Abused Its Discretion by Denying His Motion to Reconsider**

Weliever argues the district court erred in denying his motion to reconsider the denial of his suppression motion because, contrary to the court's findings, the officers did not conduct the inventory search in compliance with the established police procedures. In response, the State asserts that Weliever did not preserve the right to appeal the district court's denial of his motion to reconsider. Alternatively, if Weliever preserved the issue, the State argues that he did not provide any argument or authority supporting that the district court erred and, further, the district court did not abuse its discretion.

Pursuant to a plea agreement, Weliever entered a guilty plea. On the guilty plea advisory form, Weliever indicated that he understood the terms of the plea agreement to include that he reserved his right to appeal the decision of the "[s]uppression proceedings." However, at the change of plea hearing, Weliever's counsel told the district court that Weliever "reserves a right to appeal the motion to suppress." Assuming without deciding that Weliever's use of the plural "proceedings" included both the right to appeal from the denial of his motion to suppress and motion to reconsider, Weliever does not include any relevant argument or authority related to the motion to reconsider in his briefing to this Court.

In his reply brief, Weliever argues that "because the same legal standards apply to both of the district court's decisions, Mr. Weliever's appellate argument that 'the district court erred in failing to suppress the evidence gathered in Violation of his Fourth Amendment rights,' presents an adequate challenge[] to both decisions." Weliever is incorrect.

The decision to grant or deny a request for reconsideration generally rests in the sound discretion of the trial court. *Campbell v. Reagan*, 144 Idaho 254, 258, 159 P.3d 891, 895 (2007); *Carnell v. Barker Mgmt., Inc.*, 137 Idaho 322, 329, 48 P.3d 651, 658 (2002); *see also State v. Montague*, 114 Idaho 319, 320, 756 P.2d 1083, 1084 (Ct. App. 1998) (holding the standard for reviewing trial court's decision to reconsider is whether there has been an abuse of discretion).

When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

An appellant's brief must articulate the appropriate standard of review because an appellant must address the matters this Court considers when evaluating a claim put forth by an appellant on appeal. *Cummings v. Stephens*, 160 Idaho 847, 853, 380 P.3d 168, 174 (2016). If an appellant fails to articulate or provide analysis relating to the relevant standard of review, the appellant's argument is conclusory which is fatally deficient to the party's case. *State v. Kralovec*, 161 Idaho 569, 575 n.2, 388 P.3d 583, 589 n.2 (2017) (appellant's failure to address abuse of discretion standard of review was conclusory and fatally deficient); *see Cummings*, 160 Idaho at 853, 380 P.3d at 174 (holding defendant's conclusory argument was fatally deficient because defendant did "not identify the applicable standard of review, much less attempt to apply it"); *but see State v. Jeske*, 164 Idaho 862, 870, 436 P.3d 683, 691 (2019) (holding that although Jeske did not recite proper standard of review, he sufficiently addressed standard of review in his analysis). A party waives an issue on appeal if either authority or argument is lacking. *Zichko*, 129 Idaho at 263, 923 P.2d at 970.

Here, Weliever does not make any argument that the district court abused its discretion by denying Weliever's motion to reconsider or mention the motion to reconsider beyond the statement of the case section in his opening brief. Instead, in his reply brief, Weliever rests his argument related to the motion to reconsider upon that of his motion to suppress. However, a motion to suppress is not subject to the same standard of review as a motion to reconsider. Without articulating or providing analysis related to the standard of review for a motion to reconsider, this Court is without the argument or authority necessary to consider the claim. Accordingly, Weliever waived consideration of the issue. Because we hold that Weliever did not establish that the district court erred in denying his motion to suppress or abuse its discretion in denying his motion to reconsider, we need not address Weliever's argument that he is entitled to suppression of all direct and indirect evidence as a result of the July stop.

## IV.

## CONCLUSION

Weliever did not establish that the inventory search of his car violated the Fourth Amendment or that the district court abused its discretion in denying his motion to reconsider. Accordingly, the district court did not err by denying Weliever's motion to suppress or abuse its discretion by denying his motion to reconsider. The judgment of conviction is affirmed.

Judge GRATTON and Judge BRAILSFORD **CONCUR**.