34 P.3d 1125

**STATE of Idaho, Plaintiff–Appellant–Cross Respondent,**

v.

**Dennis T. DECCIO, Defendant–Respondent–Cross Appellant.**

No. 26723.

Court of Appeals of Idaho.

Oct. 31, 2001.

---

Hon. Alan G. Lance, Attorney General; Karen A. Hudelson, Deputy Attorney General, Boise, for appellant.

Karen A. Hudelson argued. Anderson Walker, Moscow, for respondent. John W. Walker argued.

PERRY, Judge.

The state appeals from the district court's appellate decision affirming the magistrate's order granting Dennis T. Deccio's motion to suppress. Deccio cross-appeals the district court's order denying his motion to dismiss the state's intermediate appeal for lack of appellate jurisdiction. We affirm the district court's decision affirming the magistrate's order granting Deccio's motion to suppress. Therefore, we do not reach Deccio's claim that the district court lacked appellate jurisdiction over the state's appeal and dismiss the cross-appeal as moot.

## I.

### FACTS AND PROCEDURE

The facts of this case as found by the magistrate are not disputed. On November 26, 1999, at approximately 3:00 p.m., Moscow police received an anonymous phone report from a female advising dispatch of a suicidal subject identified as Deccio. The female re-

fused to identify herself, stating only that she was the best friend of Deccio's wife, and she refused to give her address. The female stated that she was calling from a phone at a local bar and that she did not intend to stay there. The female stated that Deccio was intoxicated, had a gun, and intended to kill himself, although she did not indicate that she had personally observed the things she was calling to report. The female merely stated that she had been speaking with Deccio and Deccio's wife and that Deccio had been drinking all day. She did not indicate further the source of her information as Deccio or Deccio's wife. The female stated that Deccio was headed to the casino in Lewiston and told the dispatcher that Deccio drove a white Subaru. The female also told the dispatcher that Deccio lived on Concord Street in Moscow and indicated that it was unlikely Deccio would be home.

After attempts to locate Deccio at his home and on the roadways in Moscow proved unsuccessful, the Moscow police dispatcher notified the Latah County sheriff's office that Moscow police had received an anonymous call that Deccio was suicidal and intoxicated. A Latah County sheriff's officer spotted a vehicle matching the description of Deccio's vehicle driving southbound on Highway 95 toward Lewiston and began following the vehicle. The officer continued to follow the vehicle after it left Highway 95 and drove into the town of Genesee. The officer followed the vehicle for over a mile as it made several turns in Genesee but the officer did not observe any law violations or erratic driving. The officer eventually stopped the vehicle, believing that he needed to check the driver's welfare due to the report he received from the Moscow police dispatch. When the officer contacted the driver, Deccio, the officer smelled an odor of alcohol. Deccio was subsequently arrested for driving under the influence (DUI) after failing field sobriety tests. A bottle of vodka was found under the seat of Deccio's vehicle but no weapon was found.

The magistrate granted Deccio's motion to suppress the evidence obtained following the stop of his vehicle, including the field sobri-

ety tests and blood alcohol test. The state appealed to the district court, and Deccio moved to dismiss the state's appeal for lack of appellate jurisdiction. The district court denied Deccio's motion to dismiss the state's appeal and affirmed the magistrate's order granting Deccio's motion to suppress. The state appeals, arguing that the stop of Deccio's vehicle was constitutionally reasonable pursuant to the community caretaking function.[1] Deccio cross-appeals the district court's denial of his motion to dismiss the state's appeal.

## II.

## STANDARD OF REVIEW

On review of a decision of the district court, rendered in its appellate capacity, we examine the record of the trial court independently of, but with due regard for, the district court's intermediate appellate decision. *State v. Bowman*, 124 Idaho 936, 939, 866 P.2d 193, 196 (Ct.App.1993). The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact which are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App. 1996). Because the magistrate's findings of fact are not challenged, we exercise free review.

## III.

## DISCUSSION

■ The community caretaking function involves the duty of police officers to help individuals an officer believes may be in need of assistance. *State v. Mireles*, 133 Idaho 690, 692, 991 P.2d 878, 880 (Ct.App.1999). As stated in *Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973):

Local police officers, unlike federal officers, frequently investigate vehicle accidents in which there is no claim of criminal

---

1. The state does not argue that the officer had reasonable, articulable suspicion to stop Deccio's vehicle for DUI. Instead, the state relies solely on the community caretaking function to justify the stop.

liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.

*Id.* at 441, 93 S.Ct. at 2528, 37 L.Ed.2d at 714–15.

In analyzing community caretaking function cases, Idaho has adopted a totality of the circumstances test. *State v. Wixom,* 130 Idaho 752, 754, 947 P.2d 1000, 1002 (1997). The constitutional standard is whether the intrusive action of the police was reasonable in view of all the surrounding circumstances. *Id.; see also State v. Godwin,* 121 Idaho 517, 519, 826 P.2d 478, 480 (Ct.App.1991). In order for the community caretaking function analysis to apply, an officer must possess a subjective belief that an individual is in need of immediate assistance, although the officer may harbor at least an expectation of detecting or finding evidence of a crime. *See In re Clayton,* 113 Idaho 817, 818, 748 P.2d 401, 402 (1988); *see also State v. Osborne,* 121 Idaho 520, 526, 826 P.2d 481, 487 (Ct.App.1991). Other Idaho cases also support a subjective standard in applying the community caretaking function. *See Wixom,* 130 Idaho 752, 947 P.2d 1000; *State v. Fry,* 122 Idaho 100, 831 P.2d 942 (Ct.App.1991).

The present case involves the community caretaking function based on an anonymous tip. Although most cases involving anonymous tips center on the issue of reasonable, articulable suspicion rather than the community caretaking function, in each instance the reasonableness of a stop is analyzed under a totality of the circumstances. In analyzing the totality of the circumstances here, the threshold question is the weight, if any, the anonymous information concerning Deccio's condition should be given by the trier of fact.

In *Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), the United States Supreme Court held that a dispatcher's report may be based upon a variety of sources, including a completely anonymous tip. However, an anonymous tip standing alone is generally not enough to justify a stop because an anonymous tip alone seldom demonstrates the informant's

basis of knowledge or veracity. *State v. Larson,* 135 Idaho 99, 101, 15 P.3d 334, 336 (Ct.App.2000). The information from an anonymous tip may provide justification for a stop when the information it contains bears sufficient indicia of reliability or when significant aspects of the tip are sufficiently corroborated by independent police observations. *State v. Hankey,* 134 Idaho 844, 847–48, 11 P.3d 40, 43–44 (2000); *Larson,* 135 Idaho at 101, 15 P.3d at 336. *See also State v. Wilson,* 136 Idaho 270, 32 P.3d 164 (Ct.App.2001).

Here, the magistrate held that the anonymous tip, standing alone, did not bear sufficient indicia of reliability justifying the stop of Deccio's vehicle. We have been shown no error in the magistrate's determination. The female caller refused to identify herself or give her address. She merely stated that she was the best friend of Deccio's wife. The female did not call from home but from a phone at a local bar and indicated that she did not intend to stay there, thus avoiding the possibility of being identified or questioned. There was no indication that the female personally observed or had any first-hand knowledge of Deccio's suicidal or intoxicated condition. The female stated only that she had been speaking with Deccio and his wife and that he had been drinking all day. Moreover, the caller did not distinguish what information she obtained directly from Deccio and what hearsay information she obtained from Deccio's wife concerning Deccio. The magistrate found that, although the caller knew where Deccio lived and the type of vehicle he drove, such information was easily obtainable. The female's prediction that Deccio would not be home if officers were to check did not in itself make the tip more reliable.

The magistrate also found that, aside from the officer's observations, there was no significant confirmation of the anonymous female's information. The only information that was corroborated was that a white Subaru was registered to Deccio, that Deccio lived on Concord Street in Moscow, and that Deccio was not at home at the time officers went there. We conclude, as did the magistrate, that the anonymous tip in this case did not bear sufficient indicia of reliability justifying

the stop of Deccio's vehicle on the belief that Deccio was in need of immediate assistance. Thus, we uphold the magistrate's determination that the anonymous tip was unreliable and that it did not provide a reasonable basis for the officer to stop Deccio's vehicle under the community caretaking function.

Although the anonymous tip was primarily the basis of the officer's knowledge concerning Deccio's condition, the officer's personal observations must also be considered as part of the totality of the circumstances analysis. In *Hankey,* the Idaho Supreme Court held that information contained in an anonymous tip, insufficient by itself to justify a stop, is entitled to some weight when taken together with other facts known to an officer. In that case, an officer observed a blue Mazda pickup truck following a woman and child who were walking on the side of a highway. As the officer continued down the highway, radio dispatch informed him that a possible "domestic" was in progress and gave a description of a blue Mazda pickup at the location the officer had just passed. The officer returned to the location of the pickup and observed it again. Although the anonymous information received by the officer through police dispatch was insufficient, standing alone, to justify a stop, the unusual activity that the officer had initially observed, with the pickup following the woman and child on the shoulder of the highway, sufficiently corroborated the information in the radio dispatch to provide the required reasonableness to stop the vehicle.

In this case, the only details from the anonymous tip the officer corroborated by independent observation were that a white Subaru was being driven by a male in the direction of Lewiston. The officer's personal observations corroborated no other significant aspects of the anonymous tip. The magistrate found that the officer did not observe any law violations or erratic driving while following Deccio, which tended to disprove that Deccio was intoxicated. The magistrate also found that the officer observed Deccio reach under the seat but, aside from this, the officer observed nothing to indicate that Deccio was armed or suicidal. In addition, the vehicle did not continue southbound on Highway 95 toward Lewiston, as the anonymous tip predicted. Rather, the vehicle turned off the highway and proceeded into the town of Genesee, again disproving the information provided. The officer's inability to corroborate significant details of the anonymous tip enabled the magistrate to afford the anonymous tip little weight in its determination that the community caretaking function did not apply in this case.

■ Moreover, the officer did not otherwise independently observe anything that would have led him to believe that Deccio was in need of immediate assistance. There was no indication that something was wrong with Deccio or his vehicle. Deccio was not driving in an unusual manner. To the contrary, the magistrate found that the officer observed no law violations or erratic driving while following or stopping Deccio. The only information the officer possessed concerning Deccio's suicidal or intoxicated condition was obtained through dispatch from the anonymous tip. Therefore, we uphold the magistrate's determination that the officer's personal observations were also insufficient to justify the stop of Deccio's vehicle under the community caretaking function. *See Wixom,* 130 Idaho at 754, 947 P.2d at 1002.

Because of our disposition of the state's issue on appeal, it becomes unnecessary for us to reach Deccio's claim that the district court erred by denying his motion to dismiss the state's appeal for lack of appellate jurisdiction. Therefore, we dismiss Deccio's cross-appeal as moot.

## IV.

## CONCLUSION

We conclude that the anonymous tip was not sufficiently reliable and, therefore, did not provide a reasonable basis for the officer to stop Deccio's vehicle. We further conclude that the officer's personal observations, coupled with the tip, did not provide a reasonable basis to stop Deccio's vehicle. For these reasons, we uphold the magistrate's determination that the community caretaking function was not applicable in this case.

Therefore, the district court's decision, affirming the magistrate's order granting Deccio's motion to suppress, is affirmed. We do not reach Deccio's claim that the district court lacked appellate jurisdiction over the state's appeal and dismiss the cross-appeal as moot.

Chief Judge SCHWARTZMAN and Judge Pro Tem KOSONEN, concur.