IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 39899

| STATE OF IDAHO, | ) | 2013 Unpublished Opinion No. 468 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: April 29, 2013 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| VALARIE LYNN POSEY, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Carl B. Kerrick, District Judge. Hon. Barry E. Watson, Magistrate.

Order of the district court, on appeal from the magistrate division, affirming judgment of conviction for excessive driving under the influence and failure to give immediate notice of an accident, affirmed.

John M. Adams, Kootenai County Public Defender; J. Lynn Brooks, Deputy Public Defender, Coeur d'Alene, for appellant. J. Lynn Brooks argued.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent. John C. McKinney argued.
_____

MELANSON, Judge

Valarie Lynn Posey appeals from the district court's order, on intermediate appeal, affirming Posey's judgment of conviction for excessive driving under the influence (DUI) and failure to give immediate notice of an accident. Specifically, Posey challenges the magistrate's denial of her motion to suppress. For the reasons set forth below we affirm.

I.

FACTS AND PROCEDURE

On March 24, 2011, an officer was on duty when he received a call relating to an automobile accident. The officer responded to the scene of the crash and discovered a red car and a gray SUV with visible signs of damage. Upon inspection, the officer discovered the red car's front fender and door were damaged, the airbags had deployed, and the front left wheel was

1

broken. The officer located a young girl, approximately age twelve, bleeding at the scene. However, the driver of the red car, later identified as Posey, was not present. Witnesses indicated Posey left the scene and headed westbound on foot. The officer then received additional information from dispatch, indicating that a witness (the reporting party) had followed Posey after she left the scene and called 911. The officer responded to the area where the reporting party had followed Posey to and the reporting party indicated to the officer that Posey entered a nearby house. The reporting party then directed the officer to that residence.

The officer approached the residence and knocked on the door several times. There was no answer, and the officer heard no movement or any voices inside. The officer then contacted dispatch in an attempt to get a phone number for the residence. The officer also requested contact with a supervisor to see whether he could force entry into the residence. At this point, the officer once again made contact with the reporting party, who indicated that Posey appeared to be "out of it" and was bleeding from the face. The party also indicated that, while Posey was still at the scene, she had attempted to start her car again, despite the crash and obvious damage. The reporting party then stopped Posey from doing so and took the keys away, at which point Posey left the scene and the reporting party followed.

The officer's supervisor thereafter approved the request to force entry into the residence. The officer attempted to kick the door open, but these attempts proved unsuccessful. Next, the officer observed the handle on the door begin to move, at which time the officer directed whoever was behind the door to step away. The officer then utilized a sledgehammer, obtained from fire department personnel at the scene, and successfully opened the door. Once open, the officer observed an elderly gentleman in the residence. The officer asked where Posey was located, and the gentleman indicated she was behind the door. The officer instructed Posey to come outside. Posey appeared dazed and confused and declined medical attention despite having a cut nose, cuts on her face, and a black eye.

The officer observed that Posey had the odor of intoxicants on her breath, and Posey indicated she had consumed beer at a bar. The officer placed Posey under arrest after she failed field sobriety tests. Posey was transported to a local medical center, where a blood sample revealed her blood alcohol content to be .34. The state charged Posey with excessive DUI, I.C. § 18-8004C; failure to purchase/invalid license, I.C. § 49-301(1); transporting an open alcohol container, I.C. § 23-505; and failure to give immediate notice of an accident,

2

I.C. § 49-1305. Posey filed a motion to suppress, arguing the officer's entry into her residence violated her state and federal constitutional rights to be free from unreasonable searches and seizures.

The magistrate ruled most exceptions to the warrant requirement were not applicable, but specifically addressed two. First, the magistrate indicated that, while exigent circumstances applied to an extent, the facts here did not necessarily meet the requirements for that exception.[1] The magistrate considered the community caretaker exception. The magistrate applied a totality of the circumstances test and found that the officer harbored a belief that the driver of the red car was in need of immediate assistance. In finding that the community caretaker exception applied, the magistrate did not address the distinction between vehicles and residences. The magistrate ruled that, while using a sledgehammer "is way at the end of what might be considered reasonable in going into somebody's house," it was reasonable under the circumstances. Thus, the magistrate denied the motion to suppress. Posey then entered a conditional guilty plea to DUI and failure to give immediate notice of an accident, reserving the right to challenge the magistrate's denial of her suppression motion on appeal. On intermediate appeal, the district court affirmed. Posey again appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

---

[1]    The magistrate's rejection of the exigent circumstances doctrine as a basis for the warrantless entry has not been appealed and we need not address that issue. However, we note that, in *State v. Araiza*, 147 Idaho 371, 209 P.3d 668 (Ct. App. 2009), we upheld the warrantless entry of a residence under the exigent circumstances doctrine given officers' reasonable concern for the safety of the occupants.

3

## III.

## ANALYSIS

The Fourth Amendment, as well as Article I, Section 17 of the Idaho Constitution,[2] protect the right of people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures. The United States Supreme Court has held that the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States v. United States District Court*, 407 U.S. 297, 313 (1972). *See also State v. Johnson*, 110 Idaho 516, 523, 716 P.2d 1288, 1295 (1986); *State v. Reynolds*, 146 Idaho 466, 469, 197 P.3d 327, 330 (Ct. App. 2008); *State v. Robinson*, 144 Idaho 496, 498-99, 163 P.3d 1208, 1210-11 (Ct. App. 2007). Such entries and other searches conducted without a warrant are presumed to be unreasonable, *Payton v. New York*, 445 U.S. 573, 586 (1980); *State v. Martinez*, 129 Idaho 426, 431, 925 P.2d 1125, 1130 (Ct. App. 1996), but there are a few carefully delineated exceptions to this presumption, *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971); *State v. Brauch*, 133 Idaho 215, 218, 984 P.2d 703, 706 (1999). The state bears the burden to show that a warrantless search either fell within one of these well-recognized exceptions to the warrant requirement or was otherwise reasonable under the circumstances. *Reynolds*, 146 Idaho at 470, 197 P.3d at 331; *Martinez*, 129 Idaho at 431, 925 P.2d at 1130.

### A.     Community Caretaker Function

The magistrate denied Posey's motion to suppress, finding that the community caretaker exception applied. Posey argues that the community caretaker function does not apply in the context of residences and that, under this doctrine, an officer's actions are required to be totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.

One situation where an officer may conduct a warrantless search is when the officer is acting pursuant to the community caretaking function. *State v. Cutler*, 143 Idaho 297, 302, 141 P.3d 1166, 1171 (Ct. App. 2006). The community caretaking function arises from the duty of police officers to help citizens in need of assistance and is totally divorced from the detection,

---

[2]     Although Posey contends that both constitutions were violated, Posey provides no cogent reason why Article I, Section 17 of the Idaho Constitution should be applied differently than the Fourth Amendment to the United States Constitution in this case. Therefore, the Court will rely on judicial interpretation of the Fourth Amendment in its analysis of Posey's claims. *See State v. Schaffer*, 133 Idaho 126, 130, 982 P.2d 961, 965 (Ct. App. 1999).

investigation, or acquisition of evidence relating to the violation of a criminal statute. *Id.*; *State v. Maddox*, 137 Idaho 821, 824, 54 P.3d 464, 467 (Ct. App. 2002). In analyzing community caretaking function cases, Idaho courts have adopted a totality of the circumstances test. *State v. Wixom*, 130 Idaho 752, 754, 947 P.2d 1000, 1002 (1997); *State v. Schmidt*, 137 Idaho 301, 303, 47 P.3d 1271, 1273 (Ct. App. 2002). The constitutional standard is whether the intrusive action of the police was reasonable in view of all the surrounding circumstances. *Wixom*, 130 Idaho at 754, 947 P.2d at 1002; *Schmidt*, 137 Idaho at 303-04, 47 P.3d at 1273-74. Reasonableness is determined by balancing the public need and interest furthered by the police conduct against the degree and nature of the intrusion upon the privacy of the citizen. *State v. Godwin*, 121 Idaho 491, 495, 826 P.2d 452, 456 (1992); *Schmidt*, 137 Idaho at 304, 47 P.3d at 1274.

Posey correctly notes that cases addressing the community caretaker function have repeatedly stated that this function is totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute. *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973); *Wixom*, 130 Idaho at 754, 947 P.2d at 1002; *In re Clayton*, 113 Idaho 817, 818, 748 P.2d 401, 402 (1988); *Cutler*, 143 Idaho at 302, 141 P.3d at 1171; *State v. Deccio*, 136 Idaho 442, 444-45, 34 P.3d 1125, 1127-28 (Ct. App. 2001). However, this phrase merely describes the community caretaker function and does not preclude the possibility that an officer "may harbor at least an expectation of detecting or finding evidence of a crime." *Deccio*, 136 Idaho at 445, 34 P.3d at 1128. Therefore, the possibility that the officer here suspected Posey may have been driving under the influence does not, standing alone, prevent application of the community caretaker function.

Next, we address the appropriateness of applying the community caretaker function in situations involving residences. The community caretaker function, in its original form as set forth by the United States Supreme Court in *Cady*, justified the exception in large part because of the nature of automobiles and the extensive regulation the government exerts over them. *Cady*, 413 U.S. at 441. Idaho case law has adhered to this justification, limiting application of the community caretaker function to cases involving automobiles. *See, e.g., Godwin*, 121 Idaho 491, 826 P.2d 452 (community caretaker function applied in a "motorist assist" where officer encountered defendant on roadside in conjunction with a traffic stop of another vehicle); *Clayton*, 113 Idaho at 817, 748 P.2d at 401 (community caretaker function applied where officer located defendant passed out in a vehicle at 1:30 a.m. in a parking lot); *Cutler*, 143 Idaho at 297,

5

141 P.3d at 1166 (community caretaker function applied where officer responded to the report of an incoherent man sitting in the driver's seat of a parked vehicle outside of a store).

In this case, the only manner in which the incident can be viewed as involving an automobile is that the origin of the circumstances arose from a vehicular collision--the basis the district court found sufficient to apply the community caretaker function. However, the location of the actions pertinent here all took place in the context of a residence. The residence was the location of the person thought to be in need of assistance and the location of the warrantless intrusion. We hold that, while the events giving rise to this incident arose from an automobile collision, that, in and of itself, is an insufficient basis to apply the community caretaker function.

**B.      Emergency Aid Exception**

The state argues that the entry into the residence was permitted pursuant to the emergency aid exception and that such exception is encompassed within the community caretaker function. Posey argues that the emergency aid exception cannot provide a standalone basis to justify the entry into the residence and, even if it could, the circumstances here did not justify the actions of the officer. Idaho case law has previously recognized the emergency aid exception to the warrant requirement as within the community caretaker function. *State v. Barrett*, 138 Idaho 290, 295, 62 P.3d 214, 219 (Ct. App. 2003). While the emergency aid exception is also closely related to the exigent circumstances doctrine,[3] we examine the emergency aid exception here as a component of the community caretaker function, as the magistrate solely relied upon the latter.

The emergency aid exception allows officers to enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury. *Michigan v. Fisher*, 558 U.S. 45, 47 (2009); *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006). As one treatise writer has explained:

> It is clear that police "may enter a dwelling without a warrant to render emergency aid and assistance to a person they reasonably believe to be in distress and in need of assistance." And thus the Supreme Court in *Brigham City v. Stuart* upheld officers' entry upon seeing through a screen door and window that a juvenile being held back by several adults had broken loose and struck one of them sufficiently hard that the victim was spitting blood, for they "had an

---

[3]      Indeed, the need to provide emergency aid hinges upon the existence of circumstances that are, by definition, exigent.

objectively reasonable basis for believing both that the injured adult might need help and that the violence in the kitchen was just beginning." But if the police have entered because of a purported emergency but then find evidence of crime, that evidence will not be admissible merely based upon an unsupported and unexplained claim of an emergency. This is because "the burden of proof is on the state to show that the warrantless entry fell within the exception," and an "objective standard as to the reasonableness of the officer's belief must be applied." The objective standard means that if the circumstances viewed objectively justify the action, it is irrelevant whether the subjective motive of the police was to gather evidence or render assistance.

2 WAYNE R. LAFAVE, CRIMINAL PROCEDURE § 3.6(f) (3d ed. 2007). Thus, as with warrantless entries based upon exigent circumstances, the test for this exception is whether the facts known to the officer at the time of entry, together with reasonable inferences, would warrant a reasonable belief that an exigency justified the intrusion. *State v. Araiza*, 147 Idaho 371, 374-75, 209 P.3d 668, 671-72 (Ct. App. 2009). The reasonableness of the action is determined based upon an objective view of the circumstances--the officer's subjective motivations are not relevant. *Fisher*, 558 U.S. at 47; *Stuart*, 547 U.S. at 404.

In this case, the officer was faced with the following situation. A serious car accident had occurred, which had left Posey's vehicle severely damaged and a child apparently injured. Posey, while still at the scene, had attempted to restart the car, in spite of the obvious damage. Next, while bleeding from the face and appearing to be "out of it," Posey left the scene on foot. When the officer arrived at the residence which Posey reportedly entered, the officer knocked several times and received no response. Nor could the officer discern any movement or voices from within the residence. Given these circumstances, the officer could have drawn the reasonable inference that Posey was inside and in need of immediate medical attention. In support of this inference, the fire department had been called to the residence, presumably to provide medical attention for Posey. Plainly, facts known by the officer at the time of entry, together with reasonable inferences, warranted a reasonable belief that an exigency justified the intrusion. While the officer probably did harbor some subjective beliefs regarding a possible DUI and leaving the scene of an accident, this has no bearing on whether it was objectively reasonable to believe Posey needed emergency aid.

Finally, we address the officer's use of a sledge hammer to gain entry to the residence. The touchstone for Fourth Amendment analysis is whether the officer's actions were reasonable under the circumstances. With the benefit of hindsight, the officer might arguably have waited

7

longer to see if someone would open the door before he used the sledge hammer. However, he was faced with a report of a person who had been in a serious car crash, was bleeding from the face, appeared to be "out of it," and was not responding to his knocks on the door. The United States Supreme Court has noted in cases involving excessive use of force claims: "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). Considering the circumstances faced by the officer, we conclude that his use of a sledge hammer to breach the door was reasonable. Indeed, it is not difficult to imagine what might have happened if the officer had delayed entry for too long and Posey had been in need of immediate assistance and unable to respond. The magistrate did not err in denying Posey's motion to suppress.

## IV.

## CONCLUSION

While entry into the residence in this case was not justified solely under the community caretaker function, the emergency aid exception (which is encompassed within the community caretaker function) provided a sufficient basis for the officer's actions and the means of entry was, under the circumstances, reasonable. Therefore, the magistrate did not err in denying Posey's motion to suppress. Accordingly, the district court's order affirming Posey's judgment of conviction for excessive driving under the influence and failure to give immediate notice of an accident is affirmed.

Judge GRATTON, **CONCURS.**

Judge LANSING, **DISSENTING**

I respectfully dissent. As the majority opinion notes, exigencies sufficient to justify a warrantless search include an officer's need to provide emergency assistance to the occupant of a home. *Michigan v. Fisher*, 558 U.S. 45, 47-48 (2009). However, the emergency aid exception to the warrant requirement is applicable only where the facts known to the officer at the time of entry, together with reasonable inferences, would warrant a reasonable belief that an exigency justified the intrusion. *State v. Araiza*, 147 Idaho 371, 374-75, 209 P.3d 668, 671-72 (Ct. App. 2009). There must be a "compelling need" for the intrusion. *Michigan v. Tyler,* 436 U.S. 499, 509 (1978).

I agree with the majority that the facts known to the officer gave him reason to believe that Posey might be in need of immediate medical attention. I do not agree, however, that under the particular facts presented here, the officer's legitimate need to determine Posey's condition justified his warrantless, nonconsensual entry into the home. Any belief that a warrantless entry into Posey's home was necessary to determine whether she needed emergency aid ceased to be reasonable when an individual inside the home began turning the doorknob. At that point it was apparent that someone inside the house was conscious, mobile, and apparently attempting to open the door in response to the officer's knocks and kicks on the door. Forcible entry could not reasonably be thought necessary without first waiting to determine whether the individual would open the door or attempting to communicate with the individual through the closed door to inquire about Posey's condition. The reasonable course here would have been to wait for the door to be opened and to then ask that individual about Posey's need for medical care or ask to speak to Posey herself. Only if the individual inside ultimately failed to open the door, and sufficient communication through a closed door about Posey's condition could not be accomplished, would it have been reasonable for the officer to force an entry in order to assess Posey's need for medical attention.

The officer here refused to wait for the door to open, and he made no attempt to speak with the person behind the door. Instead, he ordered the person behind the door to stand clear so the officer could sledgehammer his way into the residence. In this circumstance, no emergent need for the officer to enter the home was demonstrated. Therefore, I would reverse the order of the district court denying Posey's suppression motion.