**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket Nos. 47858/47859**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: August 30, 2021** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) |
| JEREMY MICHEAL PORTER, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Michael J. Reardon, District Judge.

Judgments of conviction for felony driving under the influence, affirmed; orders denying motions to suppress, affirmed.

Eric D. Fredericksen, State Appellate Public Defender; Andrea W. Reynolds, Deputy Appellate Public Defender, Boise, for appellant. Andrea W. Reynolds argued.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

_____

GRATTON, Judge

Jeremy Micheal Porter appeals from two convictions for felony driving under the influence (DUI) in these consolidated cases. Porter argues that the district court erred when it denied his motions to suppress. For the reasons set forth below, we affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

In the first of the consolidated cases, Porter was involved in a two-vehicle crash in March 2019. An officer was subsequently dispatched to the scene of the accident where Porter and the other driver were already outside their vehicles. The driver of the other vehicle indicated that he was rear-ended by Porter while stopped in traffic and that he believed Porter was intoxicated. The officer also observed that Porter had poor balance, slurred speech, and bloodshot and glassy

1

eyes. Based on these observations, the officer performed field sobriety tests on Porter, which Porter failed. After completing these tests, Porter admitted that he had been convicted of a felony DUI approximately nine years earlier. Breath test results were .287, .169, and .209. Because of the varied results, the tests were re-administered, with results at .161, .228, and Porter refusing to blow a third time. Porter refused further testing, including blood testing, and was arrested and transported to jail for a blood draw. Porter again admitted to a prior felony DUI within the last ten years, but the officer nevertheless issued him a citation for misdemeanor DUI. The prosecutor thereafter amended the charge to a felony.

Porter filed a motion to suppress the evidence from the blood draw, arguing that the officer lacked legal authority to arrest him for a misdemeanor completed outside the officer's presence. The district court held that the controlling factor was what the objective facts established, not the officer's ultimate action. Because the facts objectively established probable cause for the officer to arrest Porter for a felony, the fact that the officer only cited Porter for a misdemeanor was not controlling. Considering Porter's statements to officers that he had been convicted of felony DUI within the past ten years, the district court found that the officer could (or did) objectively believe that Porter committed a felony and thus, had probable cause to arrest him for that felony. As a result, the district court denied Porter's motion to suppress.

In the second consolidated case, which occurred in May 2019, officers investigating an alarm call at a liquor store around 3:30 p.m. observed Porter drive into a parking lot, park, and turn off his engine. Upon approaching his vehicle, the officers saw Porter passed out behind the wheel. The officers attempted to rouse Porter, tapped on his window, and called out the name "Justin" three times. After these efforts failed to wake Porter, the officers opened the door of his vehicle. The officers then successfully roused Porter and ordered him to exit his vehicle. The officers smelled alcohol and Porter admitted to drinking heavily the night before. Porter failed field sobriety tests and provided one breath sample that measured at .260. Porter refused further tests and was arrested. A subsequent search of his person revealed a controlled substance and paraphernalia. Based on the May 2019 incident, Porter was charged with felony DUI, misdemeanor possession of a controlled substance, possession of drug paraphernalia, and possession of an open container of alcohol in a motor vehicle.

Porter again filed a motion to suppress, this time arguing that the State could not justify the warrantless seizure of his person and search of his person and vehicle. The district court

2

denied the motion, finding that the officers' actions in attempting to check on Porter by opening his vehicle door were consistent with their community caretaking function, and that the actions subsequent to that point were justified by the fact that they detected the odor of alcohol immediately upon opening the door to Porter's vehicle.

Following these rulings, Porter pled guilty to the felony DUI charges in both cases, reserving his right to appeal the denial of his motions to suppress. The State dismissed the misdemeanor charges. Porter timely appeals.

## II.

### STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

### ANALYSIS

Porter argues that the district court erred by denying his motions to suppress. In the March 2019 collision case, Porter argues that he was arrested for a misdemeanor offense completed outside the officers' presence in violation Article I, § 17 of the Idaho Constitution. As to the May 2019 parking lot case, Porter argues that the officer's action of opening his vehicle door was not reasonable in view of all surrounding circumstances. We address each of these contentions below.

### A.     Arrest for Completed Misdemeanor

Porter argues that he was arrested for a misdemeanor offense completed outside the arresting officer's presence in violation of Article I, §17 of the Idaho Constitution as interpreted in *State v. Clarke*, 165 Idaho 393, 446 P.3d 451 (2019). The State argues that the district court correctly applied an objective standard in determining whether probable cause to arrest for a felony offense existed at the time of arrest.

3

When reviewing an officer's actions, the court must judge the facts against an objective standard. That is, "would the facts available to the officer, at the moment of the seizure or search 'warrant a [person] of reasonable caution in the belief' that the action taken was appropriate?" *State v. Hobson*, 95 Idaho 920, 925, 523 P.2d 523, 528 (1974) (quoting *Terry v. Ohio*, 392 U.S. 1, 22 (1968)). "Because the facts making up a probable cause determination are viewed from an objective standpoint, the officer's subjective beliefs concerning that determination are not material." *State v. Julian*, 129 Idaho 133, 136-37, 922 P.2d 1059, 1062-63 (1996); *see also State v. Williams*, 163 Idaho 285, 302, 411 P.3d 1186, 1203 (Ct. App. 2018)

The district court did not err in applying an objective standard in reviewing the officer's actions. While a warrantless arrest for a misdemeanor offense completed outside an officer's presence is unconstitutional under *Clarke*, the relevant question is not what the officer believed the offense to be, but whether the facts available at the time of arrest provide probable cause for the arrest. *See State v. Amstutz*, 2021 WL 3355418 *(Idaho August 3, 2021) (explaining that officers can rely on information they are told in determining probable cause). Here, prior to his arrest, Porter admitted to the officer that he had a prior felony DUI conviction within the past ten years, elevating what would have otherwise been a misdemeanor DUI to a felony DUI. At that point, probable cause existed to arrest Porter for a felony. While Porter attempts to distinguish *Julian* by focusing on the fact that a statute, as opposed to a constitutional principle, was involved in that case, an objective standard in determining probable cause is applied whether the challenge involves a statute or constitutional provision. Therefore, we affirm the district court's denial of Porter's motion to suppress the evidence in the March 2019 collision case.

## B.     Community Caretaking Function

Porter next argues that the district court erred by denying his motion to suppress after officers opened his vehicle door in the May 2019 parking lot case. Porter asserts that the actions of the officers were in violation of the Fourth Amendment, and were not reasonable in view of the surrounding circumstances. The State argues that the district court was correct in finding that the actions of the officers were reasonable under the circumstances and were justified under the community caretaking function.[1]

---

[1]     The State also argues in the alternative that if the community caretaking function did not apply, the officers were justified in opening the car door in investigating suspected criminal activity, as Porter's vehicle did not have a front license plate. Since officers with reasonable

In analyzing community caretaking function cases, Idaho has adopted a totality of the circumstances test. *State v. Wixom*, 130 Idaho 752, 754, 947 P.2d 1000, 1002 (1997). The constitutional standard is whether the intrusive action of the police was reasonable in view of all the surrounding circumstances. *Id*. Reasonableness is determined by balancing the public need and interest furthered by the police conduct against the degree and nature of the intrusion upon the privacy of the citizen. *State v. Godwin*, 121 Idaho 491, 495, 826 P.2d 452, 456 (1992). In order for the community caretaking function analysis to apply, an officer must possess a subjective belief that an individual is in need of immediate assistance, although the officer may harbor at least an expectation of detecting or finding evidence of a crime. *State v. Deccio*, 136 Idaho 442, 445, 34 P.3d 1125, 1128 (Ct. App. 2001).

Porter cites to the United States Supreme Court's recent holding in *Caniglia v. Strom*, ___ U.S. ___, 141 S. Ct. 1596 (2021) in support of his argument that opening the door of his vehicle violated his constitutional rights. In *Caniglia*, the United States Supreme Court considered whether its prior acknowledgment in *Cady v. Dombrowski*, 413 U.S. 433 (1973) of "'community caretaking functions' such as responding to disabled vehicles or investigating accidents" "creates a standalone doctrine that justifies warrantless searches and seizures in the home." *Id.* at 1598. The Court concluded it did not. In reaching this conclusion, the Court reasoned that "the very core" of Fourth Amendment rights is "the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Id.* (quotations and citation omitted). Consistent with this core principle, the Court noted "*Cady*'s unmistakable distinction between vehicles and homes," which "places into proper context its reference to 'community caretaking.'" *Caniglia*, 141 S. Ct at 1599. Thus, while *Caniglia* sets some limits on the community caretaking function, its holding is narrow in scope. Simply put, *Caniglia* clarifies that the caretaking function of officers does not justify the warrantless intrusion into a home. As the Supreme Court succinctly stated: "What is reasonable for vehicles is different from what is reasonable for homes." *Caniglia*, ____ U.S. at ____, 141 S. Ct. at 1600.

---

suspicion are permitted to order drivers to exit their vehicles, the State argues that the act of opening the door themselves was also justified in these circumstances. Since we determine that the district court correctly held that the officers' actions were reasonable under their community caretaking function, we need not address the State's alternative argument.

Porter argues that after *Caniglia*, the community caretaking function is not an exception to the warrant requirement. Porter asserts that while officers in some instances can open a vehicle door to render assistance to a motorist, no evidence of criminal activity which may be discovered as a result may be used in a subsequent prosecution without a recognized exception to the warrant requirement. In other words, according to Porter, while it may be reasonable for officers to open the door to assist, it is nonetheless a violation of the motorist's Fourth Amendment rights and subjects all discovered evidence to suppression. The State argues that opening the door is not a violation of the Fourth Amendment so long as doing so is reasonable under the totality of the circumstances. We agree with the State. There are many scenarios under which an officer may reasonably need to open the door of a vehicle to assess the driver, the passengers, or the general circumstances. If, after opening the door, the officer develops reasonable suspicion of criminal activity, the officer may investigate that suspicion. This reasoning is consistent with prior cases involving the community caretaking function and is consistent with *Caniglia*, particularly in light of its clear distinction between homes and automobiles and its re-affirmance of the reasonableness analysis generally applicable to Fourth Amendment inquiries. *See Caniglia*, ___ U.S. at ___, 141 S. Ct. at 1599 (reiterating that the Fourth Amendment only prohibits unreasonable intrusions).

The district court considered the facts available to the officers, including the fact that Porter had pulled into the parking lot; fallen asleep (or passed out) behind the steering wheel; and could not be roused despite the officers' tapping on the window and calling out the name "Justin" several times. Based on these facts, and the district court found that opening the vehicle door to see if Porter needed assistance was reasonable under the circumstances. Porter argues that opening the vehicle door was unreasonable as the vehicle was parked in daylight hours, his name is not Justin, and the officers did not yell louder or wait longer before opening the vehicle door. Considering the circumstances, and the Supreme Court's decision in *Caniglia*, the district court did not err in finding that the officers' actions were reasonable. While Porter argues that the officers could have tried other methods or waited longer before opening the door, something true in nearly all cases, the fact that they could have done more or waited longer does not make the fact that they did not do so constitutionally unreasonable. That the incident occurred in the afternoon likewise does not make the officers' actions unreasonable. Therefore, we affirm the district court's denial of Porter's motion to suppress in the May 2019 parking lot case.

6

## IV.
## CONCLUSION

The district court did not err in denying Porter's motions to suppress in these consolidated cases. Therefore, we affirm the district court's denial of Porter's motions to suppress as well as the judgments of conviction in each case.

Chief Judge HUSKEY and Judge LORELLO **CONCUR**.