IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 48473

| STATE OF IDAHO, | ) | |
|---|---|---|
| | ) | Filed:  July 1, 2022 |
| Plaintiff-Respondent, | ) | |
| | ) | Melanie Gagnepain, Clerk |
| v. | ) | |
| | ) | |
| APRIL DAWN RAMOS, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bingham County.  Hon. Darren B. Simpson, District Judge.

Judgment of conviction for possession of a controlled substance, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Brian R. Dickson, Deputy Appellate Public Defender, Boise, for appellant.  Emily M. Joyce argued.

Hon. Lawrence G. Wasden, Attorney General; Kacey L. Jones, Deputy Attorney General, Boise, for respondent.  Kacey L. Jones argued.

_____

BRAILSFORD, Judge

April Dawn Ramos appeals from her judgment of conviction for possession of a controlled substance, Idaho Code § 37-2732(c)(1).  Ramos argues the district court erred in denying her motion to suppress evidence obtained during an inventory search of her vehicle because the officers impounded her vehicle as a pretext for a criminal investigation.  We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

While on patrol in Bingham County, Deputy Katseanes entered a parking area near a boat ramp and observed a vehicle parked by a public restroom.  He noted the vehicle "was about to leave, decided not to, [and] backed up into its spot."  After observing the driver moving around and opening the vehicle's trunk, Deputy Katseanes approached the vehicle to determine if the driver needed assistance with a flat tire.  As Deputy Katseanes approached, he relayed the vehicle's

1

license plate to dispatch.  When Deputy Katseanes reached the rear of the vehicle, the driver was gone.  The vehicle's trunk remained open; its front windows were rolled down; and it was unlocked.

Dispatch informed Deputy Katseanes the vehicle belonged to Ramos, who had an active felony warrant.  Deputy Katseanes recognized Ramos from previous encounters, radioed for assistance, requested a canine tracker to locate Ramos, and began searching for her.  During this time, Deputy Katseanes checked for Ramos in the vehicle's trunk, in the backseat, and under the vehicle; surveyed the sagebrush and vegetation behind the vehicle; and called out to Ramos to warn her a canine was coming.  Several officers arrived on scene to assist with the search.

When Deputy Miller arrived with the canine tracker, Deputy Katseanes accompanied Deputy Miller and the canine as they searched for Ramos.  During this search, Deputy Katseanes remarked to Deputy Miller that Deputy Katseanes believed the canine would alert to drugs in Ramos' vehicle and that Deputy Katseanes had observed a glove with a plastic bag inside on the vehicle's seat.  Based on Deputy Katseanes' familiarity with Ramos, he believed the glove contained drugs.

After unsuccessfully searching for Ramos, Deputies Katseanes and Miller returned with the canine to the parking area.  Another officer approached Detective Katseanes and asked what he wanted to do with Ramos' vehicle, which remained unlocked with the front windows down and the trunk open.  Detective Katseanes stated that he thought the vehicle contained drugs and that if drugs were found in the vehicle, it would be towed.  Following a second unsuccessful search for Ramos, Deputy Miller and the canine next conducted a drug sniff of the vehicle's exterior, during which Deputy Katseanes again expressed his expectation they would tow the vehicle following the canine's alert.  The canine, however, did not alert on the vehicle, and Deputy Katseanes remarked he still wanted to know what was in the glove.  Another officer responded that an inventory search would reveal the vehicle's contents.  Deputy Katseanes then stated the vehicle was parked in handicapped parking, and another officer agreed.  Before having the vehicle towed, the officers conducted an inventory search and found methamphetamine and drug paraphernalia.

The State charged Ramos with possession of a controlled substance and possession of paraphernalia, and she filed a suppression motion.  At the hearing, Ramos testified about two photographs of signage from the parking area that prohibited "leav[ing] a vehicle and/or trailer unattended for more than 48 hours," and these photographs were admitted into evidence.

2

Additionally, the State admitted into evidence the video from Deputy Katseanes' body camera and he testified. Regarding his decision to have Ramos' vehicle towed, Deputy Katseanes testified:

> [Ramos' vehicle] was parked in a no parking zone. It was used in the commission of a crime. When [Ramos] left, we felt we were somewhat liable for the car. It ultimately was community caretaking as well because the windows were down, the trunk was open, it was full of property. If we would have left [the car] there, I felt that you'd have stuff stolen, the car possibly stolen. That area is a bad area and we continually have issues with car burglaries, malicious injuries, stuff of that nature.

Deputy Katseanes also testified that Ramos' vehicle was illegally parked, stating that "the passenger side tires" were on the "diagonal solid yellow lines that would indicate that there's no parking."

After closing arguments, the district court took the matter under advisement but stated, "I'd really like to see that parking spot without a vehicle on it." Counsel agreed to accompany the court for a site visit later that week. After that site visit, the court denied Ramos' suppression motion in a written decision, concluding Deputy Katseanes' "decision to impound Ramos' vehicle was objectively reasonable." Following this decision, Ramos conditionally pled guilty to possession of a controlled substance, reserving her right to appeal the denial of her suppression motion. Ramos timely appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

ANALYSIS

## A.     Issue Preservation

Ramos argues the district court erred in denying her suppression motion because the officers impounded and inventoried her vehicle as a pretext for a criminal investigation. In support, Ramos relies on numerous comments by the officers that Deputy Katseanes' body camera video recorded. Ramos contends these statements show the inventory search was pretextual. In response, the State asserts, "Ramos did not make such an argument below, nor did she identify any officer's comments, individually or collectively, specifically or generally, as evidence of pretext."

We disagree with the State. During closing argument at the suppression hearing, Ramos' counsel clearly stated, "[T]he inventory search was nothing more than pretext to search the car without a warrant." On appeal, Ramos continues to assert this same substantive argument. Although Ramos now identifies for the first time on appeal the officers' specific statements, which she contends support her substantive argument, those statements were before the district court. Specifically, Deputy Katseanes' video captured those statements; the video was in the record before the district court; and the court repeatedly cited to the video in its written decision. Accordingly, we conclude Ramos both raised the issue and her position on that issue before the district court, and we address the merits of her argument. *See State v. Gonzalez*, 165 Idaho 95, 98-99, 439 P.3d 1267, 1270-71 (2019) (ruling "both the issue and the party's position on the issue must be raised before the trial court" but argument may evolve).

## B.     Impoundment

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Warrantless searches are presumed to be unreasonable and therefore violative of the Fourth Amendment. *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995). The State may overcome this presumption by demonstrating a warrantless search either fell within a well-recognized exception to the warrant requirement or was otherwise reasonable under the circumstances. *Id.*

Inventory searches are a well-recognized exception to the warrant requirement of the Fourth Amendment. *Colorado v. Bertine*, 479 U.S. 367, 371 (1987); *Illinois v. Lafayette*, 462 U.S. 640, 643 (1983); *State v. Owen*, 143 Idaho 274, 277, 141 P.3d 1143, 1146 (Ct. App. 2006). An inventory search must not be a ruse for general rummaging in order to locate incriminating

4

evidence, however. *Florida v. Wells*, 495 U.S. 1, 3-4 (1990). Rather, inventory searches must be "conducted in compliance with standard and established police procedures and not as a pretext for criminal investigation." *Weaver*, 127 Idaho at 290, 900 P.2d at 198. The legitimate purposes of inventory searches include protecting: (1) the owner's property while it remains in police custody; (2) the State against false claims of lost or stolen property; and (3) police from potential danger. *South Dakota v. Opperman*, 428 U.S. 364, 369-70 (1976).

Although an inventory search of an impounded vehicle constitutes an exception to the warrant requirement, an inventory search is not valid unless the police first obtain lawful possession of the vehicle. *State v. Stewart*, 152 Idaho 868, 870, 276 P.3d 740, 742 (Ct. App. 2012); *State v. Foster*, 127 Idaho 723, 727, 905 P.2d 1032, 1036 (Ct. App. 1995). An impoundment of a vehicle constitutes a seizure and is thus subject to the Fourth Amendment's limitations. *Weaver*, 127 Idaho at 291, 900 P.2d at 199. If an impoundment violates the Fourth Amendment, the accompanying inventory search is also tainted, and evidence found in the search must be suppressed. *Id.* An impoundment complies with Fourth Amendment standards only if it was "reasonable under all the circumstances known to the police when the decision to impound was made." *Id.* (citing *Opperman*, 428 U.S. at 372-73). An officer's conduct in electing to impound a vehicle is judged against an objective standard. *Weaver*, 127 Idaho at 291, 900 P.2d at 199.

In this case, Ramos argues "the officers were using the inventory exception as an impermissible pretext to conduct an investigative search of [Ramos'] car."[1] In other words, Ramos asserts the officers had no reasonable justification for impounding her vehicle. Addressing the totality of the circumstances, the district court found the facts known to Officer Katseanes when he decided to impound Ramos' vehicle:

---

[1] Ramos does not argue in her opening brief that the inventory search was not "conducted in compliance with standard and established procedures." *See State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995) (requiring inventory search comply with established standards and procedures). Further, Ramos acknowledges the district court found she failed to "question the Bingham County Sheriff's Office policy or procedure with regard to conducting inventory searches of impounded vehicles." To the extent Ramos attempts to raise this argument on reply, we decline to consider it. *See Henman v. State*, 132 Idaho 49, 51, 966 P.2d 49, 51 (Ct. App. 1998) (noting court will not address issues raised for first time on reply); *see also State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992) (ruling issues not raised before trial court may not be considered for first time on appeal).

At the time Deputy Katseanes made the decision to impound Ramos' vehicle, he had the following facts at hand: Ramos appeared to hide, and then flee, when Deputy Katseanes entered the [boat ramp] parking lot. Ramos had an outstanding felony warrant. A canine search of the area around the parking lot failed to locate Ramos. Ramos left windows down and the trunk open, with belongings visible. Ramos did not return to the car in the approximately one (1) hour and thirty (30) minutes that police officers remained on the scene before calling the tow truck. Ramos' car was illegally parked in a handicap parking space. Further, the [boat ramp] parking lot is a dangerous area for car burglaries.

Ramos does not challenge these factual findings. Rather, she challenges the district court's reliance on the fact that her vehicle "was illegally parked" and that it was in "a dangerous area for car burglaries" to conclude the impoundment of her vehicle was reasonably justified.

We conclude impounding Ramos' vehicle was reasonable under all the circumstances known to the officers when they decided to impound the vehicle. For example, that Ramos' vehicle was illegally parked in a space designated for handicap parking is a reasonable justification to impound her vehicle. Idaho Code § 49-213(2) specifically provides a vehicle parked in violation of a handicap designation may be towed.[2] In support of its conclusion that Ramos violated I.C. § 49-213(2), the district court found that "the parking space next to the no-parking area by the public restroom is a handicap-designated parking space"; "Ramos' car does not appear to have a handicap designation"; and "Deputy Katseanes noted that Ramos was parked in a handicapped parking space." In support of this latter finding, the court cited to Deputy Katseanes' video in which he and another officer noted Ramos' vehicle was parked in a handicap-designated space before impounding the vehicle.

Ramos does not dispute the officers noted her vehicle was illegally parked in a handicap-designated space before impounding it. Rather, Ramos argues that Deputy Katseanes' comments captured on the video from his body camera "demonstrat[e] he wanted to conduct an investigative search of [Ramos'] car because he had a hunch there were drugs inside" and that Deputy

---

[2]     Idaho Code § 49-213(2) provides in relevant part:

        Parking a vehicle . . . in a space reserved for a person with a disability . . . is prohibited, unless a vehicle is momentarily in the space for the purpose of allowing a person with a disability to enter or leave the vehicle, or unless special license plates or placard or temporary placard for a person with a disability is displayed on the vehicle. . . . Vehicles parked in violation of this section may be towed pursuant to provisions of state law or local ordinance.

6

Katseanes' "shifting reasons" about the vehicle being illegally parked "demonstrate he was attempting to find a pretextual reason to justify impounding the car." In support of these arguments, Ramos notes Deputy Katseanes "did not initially believe the car was parked illegally"; "did not mention any concerns with the manner or location of the parked car [until] after the [canine] did not alert"; and testified the vehicle was illegally parked based on its location relative to the parking lines.[3]

Despite the officers' comments on the video, we conclude substantial evidence supports that the officers knew that Ramos' vehicle was illegally parked in a handicap-designated space before impounding Ramos' vehicle and that they commented the vehicle was illegally parked for this reason before impounding it. Accordingly, the officers had a statutory basis to impound Ramos' vehicle. *See Opperman*, 428 U.S. at 368-69 (stating police's authority to impound vehicles violating parking ordinances "is beyond challenge"); *State v. Bray*, 122 Idaho 375, 378, 834 P.2d 892, 895 (Ct. App. 1992) (concluding decision to remove and impound vehicle for statutory law violation was "legal and proper").

Although Deputy Katseanes' comments indicate he suspected Ramos' vehicle might contain drugs, Ramos fails to cite any Idaho authority for the proposition that an officer cannot have both an objectively reasonable justification for impounding a vehicle and an expectation of subsequently discovering incriminating evidence. Impoundment is a community caretaking function. *See, e.g.*, *Opperman*, 428 U.S. at 368 (noting police frequently take vehicles into custody as part of community caretaking function); *Weaver*, 127 Idaho at 290, 900 P.2d at 198 (noting police carrying out their community caretaking function when impounding vehicle). This Court has previously ruled that the community caretaking function may justify an officer's conduct, even if the officer has an expectation of discovering incriminating evidence. *See State v. Porter*, 169 Idaho 455, 458, 497 P.3d 209, 212 (Ct. App. 2021) (noting officers "may harbor at least an expectation of detecting or finding evidence of a crime" when engaging in community caretaking functions); *State v. Schmidt*, 137 Idaho 301, 304, 47 P.3d 1271, 1274 (Ct. App. 2002) (same); *State v. Deccio*, 136 Idaho 442, 445, 34 P.3d 1125, 1128 (Ct. App. 2001) (same). Indeed, as the State

---

[3]   The district court rejected this latter reason--that Ramos' vehicle was parked over the parking lines--as a justification for impounding the vehicle, concluding "such a minor infraction fails to support a reasonable basis to tow Ramos' vehicle for a parking violation."

notes, at least one jurisdiction has rejected the notion that an officer's expectation of discovering evidence of criminal activity invalidates an otherwise reasonable inventory search. *United States v. Garay*, 938 F.3d 1108, 1112 (9th Cir. 2019); *see also United States v. Magdirila*, 962 F.3d 1152, 1157 (9th Cir. 2020) (ruling presence of dual motive--one valid and one impermissible--does not render impoundment or search unlawful).[4] Rather, the inquiry is whether the challenged search or seizure would have occurred in the absence of an impermissible reason. *Magdirila*, 962 F.3d at 1157.

Moreover, even if Deputy Katseanes' expectation of discovering drugs in Ramos' vehicle invalidated illegal parking as a justification for impounding the vehicle, that Ramos parked her unsecured vehicle in "a dangerous area for car burglaries" was another reasonable justification for impounding the vehicle. Ramos does not challenge the district court's findings that "she fled the scene . . . leaving her car windows and trunk open, with possessions visible, in an area which carried a heightened risk of car burglary" and that "Ramos did not return to her vehicle when her name was called by the officers, or during the one hour and thirty minutes the officers searched for her." As a result of this conduct, Ramos' vehicle and its contents were at risk of damage or theft. This Court has previously ruled that impoundment may be reasonably necessary "to protect the vehicle from risk of damage or theft." *Foster*, 127 Idaho at 727, 905 P.2d at 1036; *see also Opperman*, 428 U.S. at 375 (noting impoundment was not unlawful where owner left vehicle illegally parked for extended period and "was not present to make other arrangements for the safekeeping of his belongings"); *Stewart*, 152 Idaho at 871, 276 P.3d at 743 (noting when impounding vehicle "the officer had legitimate reasons to believe the vehicle was at risk of theft or damage").

Ramos argues, however, that leaving a vehicle "in a high-crime area" is "not a proper consideration" in deciding to impound a vehicle because this consideration is not one of the "historic rationales for warrantless impoundments." According to Ramos, these historical

---

[4]     On reply, Ramos cites *United States v. Johnson*, 889 F.3d 1120 (9th Cir. 2018), and *United States v. Rowland*, 341 F.3d 774 (8th Cir. 2003), in support of her assertion that "the decision to impound her vehicle was a pretext." Those cases are distinguishable, however, because they address the propriety of inventory searches versus the justification for impoundment. *See Johnson*, 889 F.3d at 1126, 1128 (ruling that officers had reasonable justification for impounding vehicle but that inventory search was unlawful); *Rowland*, 341 F.3d at 778-79 (same). In contrast, Ramos challenges the officers' reasonable justification for the vehicle's impoundment in this case, not the manner in which they conducted the inventory search.

rationales include only removing vehicles impeding traffic or threatening public safety. In support of this assertion, Ramos cites to *Opperman*, 428 U.S. at 364. *Opperman*, in fact, does state that "the authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge." *Id.* at 369. We do not read *Opperman*, however, to stand for the proposition that an officer may only impound a vehicle if it impedes traffic or threatens public safety and convenience, as Ramos suggests. Rather, *Opperman* also notes the impoundment in that case was reasonable because of "the presence in plain view of a number of valuables inside the car" and the owner "was not present to make other arrangements for the safekeeping of his belongings." *Id.* at 375-76. Additionally, the Idaho Supreme Court, citing *Opperman*, has ruled that an impoundment comports with the Fourth Amendment if it is "reasonable under all the circumstances known to the police when the decision to impound was made." *Weaver*, 127 Idaho at 291, 200 P.2d at 199. This standard does not limit impoundment only to instances where the vehicle is impeding traffic or threatening public safety.

Moreover, even if a lawful impoundment under the Fourth Amendment were limited to these two rationales, the officers' decision to impound Ramos' vehicle comported with those rationales. For example, Ramos' vehicle was impeding access to a handicap-designated parking space next to a restroom. That Ramos was only impeding vehicles lawfully entitled to use the handicap-designated parking is still a traffic impediment. Additionally, Deputy Katseanes had a reasonable belief Ramos' vehicle might contain drugs based on his familiarity with Ramos.[5] Leaving an obviously unsecured vehicle, which may contain drugs, in a public location threatens public safety.

Finally, Ramos challenges the district court's reliance on *Stewart*, 152 Idaho 868, 276 P.3d 740. She asserts that the court "improperly relied on *Stewart* for the premise that the decision to impound may be justified solely on the idea that the car would be left in a 'high-crime area'" and that *Stewart* "is not consistent with the applicable United States Supreme Court precedent" and "is manifestly wrong." We disagree that *Stewart* is either inconsistent with United States Supreme Court precedent or manifestly wrong. Further, Ramos mischaracterizes the district court's reliance on *Stewart*. Contrary to Ramos' assertion, the district court did not rely on *Stewart* to conclude impounding Ramos' vehicle was "justified solely" because the vehicle was left in a high-crime

---

[5]     During oral argument, Ramos' counsel acknowledged Deputy Katseanes' belief that drugs might be in Ramos' vehicle was reasonable.

9

area. Rather, the court compared the facts in *Stewart* to those in *Foster*, 127 Idaho 723, 905 P.2d 1052, and concluded that "the facts at bar more closely resemble those described in [*Stewart*]."

This comparison was accurate. In *Stewart*, this Court noted that the vehicle at issue was "in a gas station lot open to the public," "uninsured" and in "a high-crime area," thereby justifying impounding the vehicle to "protect the police against potential liability claims." *Stewart*, 152 Idaho at 871, 276 P.3d at 743. In contrast, the vehicle in *Foster* was "not illegally parked" and "parked off the street in a private driveway," and there was no evidence of any objection to the vehicle "remaining temporarily on the driveway" or "that it was at risk of theft or damage." *Foster*, 127 Idaho at 727, 905 P.2d at 1036. Similar to *Stewart*, in this case Ramos' vehicle was left with its windows down and trunk open in a public location and a "dangerous area for car burglaries." Accordingly, the district court did not err by citing and analyzing *Stewart*. Furthermore, Ramos' characterization of the district court's reliance on *Stewart* to conclude the high-crime area "justified solely" impounding the vehicle is refuted by the court's reliance on all of the facts known to the officers at the time they decided to impound the vehicle, including that it was illegally parked in a handicap-designated space.

## IV.

## CONCLUSION

The district court did not err by denying Ramos' suppression motion. Accordingly, we affirm her judgment of conviction.

Judge GRATTON and Judge HUSKEY **CONCUR**.

10